UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMES M. COLEMAN, | Case No.: 2:06-cv-00925-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motions to Compel Arbitration–#41 & #44) |
| ASSURANT, INC., a Delaware Corporation; AMERICAN SECURITY INSURANCE COMPANY, a Delaware Corporation; UNION SECURITY LIFE INSURANCE COMPANY, a Delaware Corporation; and MBNA AMERICA BANK, a Delaware Corporation, | |
| Defendants. | |

Before the Court is Defendant MBNA America Bank's ("MBNA") **Motion to Compel Arbitration** (#41), filed February 2, 2007. Also before the Court is Defendants Assurant, Inc., American Security Insurance Company and Union Security Life Insurance Company's (collectively the "Insurance Defendants") **Motion to Compel Arbitration and Joinder in MBNA's Motion to Compel Arbitration** (#44) ("Joinder Motion"), filed February 8, 2007. The Court has also considered Plaintiff's **Opposition to Defendants' Companion Motions to Compel Arbitration** (#58), filed June 4, 2007. The Court has also considered Defendant

1

AO 72
(Rev. 8/82)

1  MBNA's Reply (#61), filed June 25, 2007; as well as the Insurance Defendants' Reply which was
2  filed twice (#60 & #62), June 22, 2007, and June 27, 2007.

## BACKGROUND

Plaintiff alleges that at all relevant times he had a "platinum plus" credit card from MBNA. In 2000, Plaintiff claims MBNA sent him advertisements for "valuable insurance protection that would discharge his indebtedness to MBNA should he become disabled, unemployed or die." (Compl. 3.) On September 1, 2000, Plaintiff alleges he purchased credit life, dismemberment, unemployment and disability insurance through the Insurance Defendants. Monthly credit insurance premiums were charged to Plaintiff's MBNA credit card account. Soon thereafter, Plaintiff received a letter from the Insurance Defendants explaining that the insurance coverage would "provide important protection for your account." (*Id.*) Furthermore, the letter also stated that the amount of coverage had been "expanded to cover your Insured balance as long as you are disabled." (*Id.*) The policy limit on the coverages was also expanded from $15,000 to $25,000. (*Id.*)

In late November 2001, Plaintiff allegedly fell ill from cardiovascular problems and has been disabled ever since. In 2004 the Insurance Defendants announced that they had fulfilled their obligations to Plaintiff and would make no more payments on the account. (*Id.* at 4.) In July 2005, Defendant MBNA allegedly threatened to sue Plaintiff and report his account as a "bad debt" to credit bureaus. (*Id.*) Plaintiff, brought the instant action alleging breach of contract, implied covenant of good faith and fair dealing, statutory duties, fiduciary duty, and also misrepresentation.

All Defendants now move to compel arbitration of Plaintiff's claims pursuant to the arbitration clause in the platinum plus credit card agreement (the "Agreement"). For the reasons stated below, Defendants' Motions to Compel are granted.

////

////

**DISCUSSION**

<u>Standard</u>

The Federal Arbitration Act ("FAA") states, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. *Id.* at § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

*1. Whether a Valid Agreement to Arbitrate Exists*

**A. Choice of Law**

Whether a valid agreement to arbitrate exists is governed by generally applicable state contract law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). Parties have wide latitude to choose the law that will determine the validity and effect of their contract if the situs fixed by the agreement has a substantial relation with the transaction and is not contrary to the public policy of the forum. *Ferdie Sievers and Lake Tahoe Land Co., v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev. 1979).

The Court finds that the applicable law in this situation is Delaware law. The Agreement between MBNA and Plaintiff states that it is "governed by the laws of the State of Delaware . . . and by any applicable federal laws." (Dkt. #41, Mot. Ex. A 7.) Delaware has a substantial relation with the transaction because that is where headquarters of MBNA is located.

AO 72
(Rev. 8/82)

1  Furthermore, enforcing this choice of law provision is not against the public policy of Nevada. *See*
2  *Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995). Therefore, the Court finds that Delaware
3  law determines the validity of this arbitration agreement. *See Rose v. Chase Manhattan Bank*
4  *USA*, 2006 WL 1520238 (D. Nev. 2006) (holding that Delaware law applied in determining the
5  validity of arbitration agreement in credit card agreement).

**B. Validity**

7  Under Delaware law, cardholders may assent to the terms of a credit card
8  agreement by using the credit card. *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. Ct.
9  1998). MBNA's Agreement clearly states that use of the credit card will constitute acceptance of
10 the agreement. (Dkt. #41, Mot. Ex. A 1). Therefore Plaintiff agreed to the terms of the
11 Agreement, including the arbitration provision, by using the MBNA credit card. Therefore, the
12 Court finds that the Agreement is valid.

*2. Whether the Agreement Encompasses the Dispute at Issue*

14 The Court's inquiry here is limited to "ascertaining whether the party seeking
15 arbitration is making a claim which on its face is governed by the contract." *Medtronic AVE, Inc.*
16 *v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 55 (3d Cir. 2001) (quoting *United Steelworkers of*
17 *Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960)). In making this inquiry, the Court is guided by
18 "a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance
19 should not be denied unless it may be said with positive assurance that the arbitration clause is not
20 susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in
21 favor of coverage.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)
22 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).
23 The Agreement's arbitration provision states: "Any claim or dispute ('Claim') by
24 either you or us against the other . . . arising from or relating in any way to this Agreement . . . or
25 your account . . . shall be resolved by binding arbitration." (Dkt. #41, Mot. Ex. A 7-8.) The
26 arbitration provision clarifies that: "'we' and 'us' means MBNA America Bank, N.A., . . . [and]

4

1    any third party providing benefits, services, or products in connection with the account (including .

2    . . credit insurance companies . . . ) if and only if, such a third party is named by you as a co-

3    defendant in any Claim you assert against us." (*Id.* at 9.)

4         The Court finds that all of Plaintiff's claims and all named Defendants fall within

5    the scope of this arbitration provision. The facts of Plaintiff's Complaint concern how his account

6    was billed, how his account was not paid off by the credit insurance companies, MBNA's sales

7    and marketing activities in reference to the credit insurance for the account, and a breach of

8    MBNA's fiduciary duty to Plaintiff, which duty arises out of the account. Therefore, the Court

9    finds that all Plaintiff's claims stem from the account with MBNA and benefits provided by third

10    parties in connection with the account. Thus, the broad language of arbitration provision

11    encompasses all Plaintiff's claims as to all parties. *See e.g. Parfi Holding AB v. Mirror Image*

12    *Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002) (holding that the court should defer to arbitration on

13    any issues that touch on contract rights or contract performance when the arbitration provision

14    uses broad language).

15         Accordingly, the Court finds that a valid agreement to arbitrate exists, and that the

16    agreement to arbitrate encompasses all of the claims at issue.

17    **Plaintiff's Opposition**

18       *1. Reverse Preemption of the FAA*

19         Plaintiff argues that there is a reverse preemption of the FAA through Nev. Rev.

20    Stat. § 689B.067 and the McCarran-Ferguson Act ("MFA"), 15 U.S.C. § 1001 et seq. However,

21    the Court finds that the Nevada Revised Statutes that Plaintiff cites are not applicable in this

22    instance and therefore that the FAA is not reverse preempted.

23         Plaintiff claims that the insurance he purchased for his account should be

24    considered health insurance pursuant to Nev. Rev. Stat. § 681A.030. (defining "health insurance"

25    as "insurance of human beings against bodily injury, disablement or death . . . or against

26    disablement or expense resulting from sickness.) Plaintiff asserts that since he purchased health

1  insurance, he was entitled to have an opportunity to opt out of binding arbitration. Nev. Rev. Stat.
2  § 689B.067 (requiring an opportunity for members to opt out of binding arbitration when joining a
3  group health insurance policy).  In keeping with the MFA, circuit courts have held that if enforcing
4  an arbitration clause pursuant to the FAA would invalidate, impair or supersede a state's anti-
5  arbitration law regulating the business of insurance, a court should refuse to enforce the arbitration
6  clause. *Standard Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821, 823 (8th Cir. 2001); *see also*
7  *McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854 (11th Cir. 2004); *Am. Bankers Ins. Co. of Fla. v.*
8  *Inman*, 436 F.3d 490 (5th Cir. 2006); and *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*,
9  969 F.2d 931, 934-35 (10th Cir. 1992).

10         The Court finds that Nev. Rev. Stat. § 689B.067 will not be impaired, superseded
11  or invalidated by enforcing the arbitration clause pursuant to the FAA.  Nevada law defines the
12  insurance Plaintiff purchased in case of disablement not as health insurance, but as "Credit
13  insurance." *See* Nev. Rev. Stat. §§ 690A.0135, 690A.015.  Furthermore, § 689B.067, which
14  Plaintiff cites as authority that Defendants needed to provide an opportunity to opt out of the
15  arbitration provision, specifically does not apply to credit insurance. *See* Nev. Rev. Stat. §
16  689B.010 (stating that chapter 689B only applies to "group health insurance contracts and to
17  blanket accident and health insurance contracts"); § 689B.390(2)(f) (stating that the term "group
18  health plan" specifically does not include "Credit insurance"); 689B.410(2)(f) (stating that the
19  term "health benefit plan" specifically does not include "Credit insurance"); and 689B.070
20  ("blanket accident and health insurance contracts" only cover certain groups, none of which
21  pertain to Plaintiff in this instance).  Therefore, because § 689B.067 does not govern Plaintiff's
22  insurance, but rather, Plaintiff's insurance is specifically exempted from that law, the Court finds
23  that enforcing the FAA will not invalidate, impair, or supersede § 689B.067.  Therefore, the
24  arbitration clause may still be enforced pursuant to the FAA.
25  ////
26  ////

AO 72
(Rev. 8/82)

### 2. Waiver of the Right to Compel Arbitration

Plaintiff also contends that Defendants waived their right to compel arbitration because Defendants never informed Plaintiff of the arbitration procedure after denying Plaintiff's claims and Plaintiff's appeals of the denied claims. (Opp'n 8-9.)

#### A. Choice of Law

The Ninth Circuit has held that "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (2002). Therefore, the Ninth Circuit interprets a general choice of law provision "as simply supplying state substantive, decisional law, and not state law rules for arbitrations." *Id.* Therefore, in accord with the Ninth Circuit, the Court finds that "the Agreement incorporates the FAA's rules for arbitration, but [Delaware] substantive law applies in all other respects." *Id.* "[W]aiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls." *Id.*

#### B. Waiver of the Right to Compel Under the FAA

To successfully assert that a defendant waived its right to compel arbitration under the FAA, a plaintiff must show: (1) the defendant had knowledge of its existing right to compel arbitration; (2) the defendant acted inconsistently with that existing right; and (3) the plaintiff suffered prejudice from the defendant's delay in moving to compel arbitration. *Id.*; *see also United Comp. Sys., Inc., v. AT & T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002). The moving party bears a "heavy burden of proof" in showing these elements. *Sovak*, 280 F.3d at 1270.

As to the first element, the Insurance Defendants make the incredible argument that "there is no reason to believe, and the Plaintiff has not proven, that [the Insurance Defendants] were aware of the arbitration provision contained in the Credit Card Agreement." (Dkt. #60, Reply 10.) The Court finds it unreasonable to assert that an insurance company would not know of an arbitration provision in an underlying contract for an account the insurance company was agreeing to insure.

Nevertheless, the Court still finds that Defendants have not waived their right to compel arbitration because Plaintiff has not met his heavy burden of proof on at least the third element. Plaintiff does not argue in his Opposition, nor sufficiently allege in his Complaint, that there has been prejudice suffered by any delay in this matter. As such, the Court finds that the right to compel arbitration has not been waived.

Because the Court finds that the arbitration clause is valid, that it encompasses the claims at issue as to all parties, that it is not preempted, and that the right to compel arbitration has not been waived, the Court orders that the Defendants' Motions to Compel be granted.

**Application for Stay**

The Insurance Defendants have applied for a stay in these proceedings while the matter is referred to arbitration. (Dkt. #44, Mot. 8.) The FAA provides that when a court is satisfied that issues involved in a lawsuit are referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court is satisfied that Plaintiff's claims are arbitrable, and therefore grants the Insurance Defendants' application to stay these proceedings pending arbitration.

**Leave to Amend**

Plaintiff has asked for leave to amend the Complaint because he "neglected to name MBNA in his third cause of action for breach of the Duty of Good Faith and Fair Dealing." (Opp'n 8.) The Court will allow Plaintiff seven (7) days from the entry of this Order to amend its Complaint, solely to name MBNA in the third cause of action. Thereafter, these matters will be referred to arbitration.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motions to Compel Arbitration (#41 & #44) are GRANTED as follows:

1  IT IS ORDERED that Plaintiff shall have seven (7) days to amend his Complaint,
2  solely to name Defendant MBNA in the third cause of action for breach of the duty of good faith
3  and fair dealing.
4  IT IS FURTHER ORDERED that after seven (7) days the matter shall be referred
5  to arbitration as detailed in the Agreement.
6  IT IS FURTHER ORDERED that proceedings in this matter shall be stayed until
7  arbitration is completed or further order from the Court.
8  IT IS FURTHER ORDERED that the parties shall present a joint status report to
9  the Court within four (4) months of the entry of this Order; or if a final decision is made in
10  arbitration before four (4) months, within ten (10) days of the final decision in arbitration.
11  Dated:  September 10, 2007.

_____
**ROGER L. HUNT**
**Chief United States District Judge**